Suzanne von Mandel v. Commissioner.
Von Mandel v. Commissioner
Docket No. 85514.
United States Tax Court
T.C. Memo 1962-8; 1962 Tax Ct. Memo LEXIS 299; 21 T.C.M. (CCH) 35; T.C.M. (RIA) 62008; January 17, 1962
*299 Held: Petitioner has failed to meet the burden of proving that her former husband, in the year 1955, suffered a loss of $17,299.54 within the meaning of sec. 165(a) of the Code of 1954 as limited by sec. 165(c)(1) or (2). Alexander J. Holland, Esq., Smith Bldg., Greenwich, Conn., for the petitioner. Douglas D. Robertson, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined a deficiency in income tax of the petitioner for the taxable year 1955 in the amount of $5,582.72. One of the issues has been disposed of by agreement of the parties. The only issue for our consideration is whether or not petitioner has met the burden of proving that her former husband, in the year 1955, suffered a loss of $17,299.54 within the meaning of section 165(a) as limited by section 165(c)(1) or (2). Findings of Fact Some of the facts are *301 stipulated and are incorporated herein by reference. Petitioner is an individual residing at Cameron Drive, Greenwich, Connecticut. Petitioner and her former husband, Michael Von Mandel, (hereinafter referred to as Michael) who presently resides in West Germany, filed a joint Federal income tax return for the taxable year 1955 with the district director of internal revenue, Newark, New Jersey. Michael entered into the following agreement with R. S. Lakovic: AGREEMENT Whereas R. S. Lakovic has the exclusive import and distribution rights for the United States and Canada, for the Caser sewing machine manufactured in Pavia, Italy, based on the contract between Ernesto Casatti and the Caser Sewing Machines Co., Inc., whose sole stockholder is R. S. Lakovic, and Whereas Michael von Mandel intends to participate in this business, the two parties have agreed to day as follows: 1. R. S. Lakovic transfers herewith his contract with the manufacturer Ernesto Cassatti, Pavia, in his name, and in the name of the Caser Sewing Machine Co., Inc. to the Caser Distributors, Inc., or any new firm which may be organized according to article 3 of this agreement. 2. Michael von Mandel is to *302 take care of the financing of this business and will provide the necessary financial means (in the form of paid in capital and loans) up to $50,000.00 (fifty thousand dollars) gradually, according to the needs of the business. 3. The business with the new ZigZag machine was started in January 1953, for which purpose R. S. Lakovic organized the Caser Distributors, Inc. This corporation has a paid-in capital of $10,000.00 invested by 5 investors. Since this amount was too small to meet the needs of the business, these first investors are willing to sell their shares and to take a loss. An offer is to be made to them based on the Net Worth according to the attached balance sheet as of April 4, 1953. Should these negotiations fail, a new corporation will be organized to carry out the Caser business. 4. Under whatever name the business is organized, it is agreed that each party to this agreement shall have 50% (fifty percent) of the shares. 5. For valuable services in the development of the business in the past, the following persons are to receive out of the annual profits, participations as follows: Emil Flesch
4% (four percent)
Miss Magujliana
3% (three percent)
Steve Costello
2% (two percent)
*303 For bringing the parties of this agreement together, commissions of $.25 (twenty-five cents) per machine sold are to be paid to Eva C. Burke and Emil Flesch each. These commissions are to be paid monthly based on the monthly sales. 6. The profits are to be distributed semi-annually. 7. The salaries drawn by Messrs. von Mandel and Lakovic are to be considered as drawings against future profits, for the purposes of this agreement. These drawings are fixed at $125.00 weekly. 8. It is understood by both parties that the advertising campaign should be very intensive during the first three months. This campaign should start immediately, omitting the out-of-season months of June and July, and is to continue in August. 9. Since the months of June to August are out of season, the real results can be evaluated in September. Should the sales in September or in any subsequent month fail to reach 200 machines per month, Mr. von Mandel can terminate his participation. In such a case, as in all dissolution cases, the entire investment of Mr. von Mandel is to be repaid to him, using for this purpose all the assets of the corporation. 10. The officers of the corporation will be as follows: *304 Mr. Michael von Mandel
Pres. and Treas.
Mr. R. S. Lakovic
Vice President
Mr. Emil Flesch
Secretary
11. The right to act for the corporation is entirely in the hands of Michael von Mandel and will be voted to him at the first meeting of the stockholders. However, Mr. von Mandel will make use of this right only in case of emergency. For ordinary business transactions, and for signing of checks, two signatures will be used, in order to give a better impression to outsiders. Mr. von Mandel will sign jointly with Mr. Lakovic or with Mr. Flesch. 12. Mr. Lakovic is to run the whole business and to devote his full time to the corporation. He will consult with Mr. von Mandel in all decisions to be made and report to him daily about all developments and details of the business. 13. Since the corporation is a closed one, the stock cannot be sold to outsiders. However, this will not prevent Mr. von Mandel from transferring part of his stock to members of his immediate family. 14. The operations have to start today for the accounting of this new arrangement. Signed this sixth day of April 1953. Michael von Mandel R. S. Lakovic R. S. Lakovic, PRES. CASER *305 SEWING MACHINES, INC. On January 27, 1953, Michael purchased 15 shares of Caser Distributors, Inc., stock for a total price of $10,000. On May 7, 1953, Michael purchased an additional 35 shares of the same corporation for $32,250. Caser Distributors, Inc., is hereinafter referred to as Caser. Caser kept its records on a fiscal year basis ending March 31. The books of Caser were not available at the trial. A trial balance of Caser for the fiscal year ended March 31, 1954, disclosed a so-called loan account which showed a credit to Michael in the approximate amount of $50,000. There was also an account referred to as advancements into paid-in capital by Michael in which the credit balance as of March 31, 1954, was $32,250. Caser had losses in the fiscal years March 31, 1954, to 1956, inclusive, in the respective amounts of $34,889.84, $17,299.54 and $5,628.67. Some time after the end of each such fiscal year, Michael's so-called loan account was charged with Caser's loss andcaser's profit and loss account was credited in a like amount, the ultimate result of such adjustments being that Caser appeared to break even, with no net profit or loss for each such year. On their 1955 *306 return, petitioner and Michael deducted $17,299.54, characterizing it as "loss sustained operating Caser Distributors, Inc., 7 Park Ave., New York City, at own risk." In the statutory notice of deficiency sent to petitioner, respondent disallowed the deduction and determined that the amount in question was not deductible as an ordinary loss under section 165 of the Code of 1954. Opinion Petitioner's position appears to be as follows: Michael, prior to April 6, 1953, had been active in the business of importing and distributing various products for several years. He desired the opportunity to exploit the franchise for importing and distributing Caser sewing machines. Lakovic had the exclusive import and distribution rights for the Caser machine in the United States and Canada. This led to the agreement of April 6, 1953. According to the agreement, Michael was to take care of the financing of the business and provide gradually any financial requirements up to $50,000, according to the needs of the business. A corporation was to be formed. Since Michael, under the agreement, was to take care of the financing, this function constituted a business as far as Michael was concerned, *307 separate and distinct from that of the corporation. Michael orally agreed to assume the losses of Caser. Sometime in 1955, Michael's so-called loan account was debited in the amount of $17,299.54 (the amount of Caser's loss for the fiscal year ended March 31, 1954) and correspondingly, Caser's profit and loss account was credited in the same amount. Ergo, argues petitioner, Michael suffered a business loss for 1955 in the amount indicated above deductible in full under section 165(a) and (c)(1), or in the alternative, a loss incurred in a transaction entered into for profit (though not connected with a trade or business under section 165(c)(2)). [1]
The issue might present some difficulty if *308 the record supported the factual basis assumed by petitioner. We think, however, that the evidence falls materially short of establishing the essential facts. Moreover, we must scrutinize the facts with care, since the opportunity for tax avoidance is apparent. Caser suffered a loss from which it was at least unlikely that it would recoup any tax benefit. It was obvious that it had no possibility of a carry-back, and little likelihood of carrying the loss forward to reduce taxes in subsequent years. Thereupon, superficially at least, the picture appeared completely changed as to Michael through charging the loss to him. The joint income tax return of Michael and petitioner shows sufficient income to him from other sources to make the deduction valuable to him at least for 1955. It was incumbent upon petitioner, in her effort to sustain her position, to prove at least that Michael had entered into a bona fide agreement to "assume" Caser's losses, that in accordance with such agreement, he did in fact assume such losses, and that, as a result, he himself suffered a loss of the amount in question. Petitioner's counsel vigorously argues on brief that Michael did enter into an agreement *309 to assume Caser's losses. There is no acceptable evidence to support this contention. There is nothing in the record to show with whom the alleged agreement was entered into. It is admitted that it was not in writing. There is no suggestion that the other party was Lakovic, or Caser, or, for that matter, anyone else. No such understanding is mentioned in the agreement with Lakovic of April 6, 1953. And there is no evidence of the consideration for the alleged agreement to assume such losses, or any other of the terms and conditions of the alleged agreement. Likewise, there was no evidence of the time, place, or circumstances under which it was entered into. Petitioner, on brief, argues that the charges to Michael's loan account in amounts equalling Caser's losses give rise to the necessary inference that there was such an agreement. We cannot agree. While the bookkeeping entries represent factors to be considered, they are not controlling and are not, under the circumstances before us, satisfactory evidence of the existence of the alleged agreement or its terms. The books were not "available" at the trial. Explanations in connection with journal entries might have been revealing, *310 but we cannot assume what the revelation, if any, may have been. It is urged that petitioner was at a disadvantage because Michael had gone to Germany to live. We, however, cannot assume what his evidence might have been if he had appeared at the trial or if his deposition had been taken. Moreover, Lakovic was not called as a witness. No explanation of his failure to testify is offered. While not controlling, it is to be noted that no money passed at the time of the alleged loss. Michael had a credit on the books, and the only physical acts were entries charging his account and crediting profit and loss. There is no evidence as to who made the entries or the instructions therefor. They certainly were sufficiently unusual to have warranted some inquiry as to their basis. After careful consideration of the entire record, we conclude that petitioner has failed to meet the burden of proving error in respondent's determination. The thread on which petitioner relies is too flimsy to support her position that Michael sustained a bona fide loss for 1955 in the amount claimed. While petitioner has relied solely on the provisions of section 165(a) and 165(c)(1) and (2), we think it proper *311 for completeness to add that we would have reached the same conclusion if she had relied upon section 162(a) or 212. Decision will be entered for the respondent. Footnotes
1. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and * * *↩